SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Co-Counsel for Plaintiffs*

JOSEPH S. GILBERT, ESQ.
Nevada State Bar No.: 9033
JOEY GILBERT LAW
405 Marsh Avenue
Reno, Nevada 89501
Tel: (775) 284-7700
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
*Co-Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BROOKLYN TONI, an individual, and DOMINIQUE JARDIN, guardian filing on behalf of minor N.J<br><br>                    Plaintiffs,<br><br>vs.<br><br>WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada, and individual, BEAU WALKER, an individual, KYLE FORD, an individual, and DOES I -XX<br><br>                    Defendants. | Case No.: 3:23-cv-00229<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY DEMAND** |

        COME NOW, Plaintiffs, by and through their attorneys of record, SIGAL CHATTAH,

ESQ., of CHATTAH LAW GROUP and JOSEPH S. GILBERT, ESQ., of JOEY GILBERT

LAW, and hereby alleges and complain against Defendants as follows:

1

## JURISDICTION AND VENUE

**1.**       This court has Federal subject matter jurisdiction under 42 U.S.C. § 1983, 20 U.S.C § 1681 et seq., 42 U.S.C. § 2000d et seq., and 28 U.S.C §§ 1331 and 1343.

**2.**       Venue is proper under 28 U.S.C. § 1391 in the District of Nevada, Washoe County, because this claim arose therein.

**3.**       Every act and omission alleged herein was done by Defendants and carried out under the color of state and federal laws, statutes, ordinances, regulations, or customs.

**4.**       This Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by Plaintiffs' Federal claims.

**5.**       All of the acts or failures to act herein were duly performed by and attributable to all Defendants, each acting as agent, employee, or under the direction and/or control of the others.  Said acts or failures to act were within the scope of said agency and/or employment and each of the Defendants and ratified the acts and omissions by the other Defendants.  Whenever and wherever reference is made in this Complaint to any acts by Defendants, such allegations and references shall also be deemed to mean the acts of each of the Defendants acting individually, jointly, or severally.

**6.**       The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES I through XX, and ROE CORPORATIONS I through XX, inclusive, are unknown to Plaintiffs who therefore sues said Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE or ROE CORPORATION are responsible in some manner for the events and

2

happenings herein referred to and damages caused proximately thereby to Plaintiffs as herein alleged; that Plaintiffs will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Defendants DOES I through XX and/or ROE CORPORATIONS I through XX, when same have been ascertained by Plaintiffs together with appropriate charging allegations, and to join such Defendants in this action.

**PARTIES**

7.      Plaintiffs are currently and at all times relevant herein, residents of the County of Washoe, State of Nevada.

8.      Plaintiff DOMINIQUE JARDIN is the mother and legal guardian of *N.J.*, a minor child (hereinafter "Minor Plaintiff or N.J." *inter alia*).  N.J. at all times complained of herein, was and is a minor child enrolled in and attending Galena High School, within the Washoe County School District.

9.      Plaintiff BROOKLYN TONI (hereinafter "Plaintiff Brooklyn or Brooklyn" *inter alia*), was at times complained of herein, a minor child enrolled in and attending Washoe County School District schools and is now eighteen years of age attending an educational program other than Galena High School in order to receive her diploma.

10.      Defendant Washoe County School District is a political subdivision of the state of Nevada, having and exercising full control, power, and oversight over the operations and activities at its schools, over its programs and its administrators, teachers, coaches, and other staff members, whose purpose is to administer the state system of public education and its various programs and activities, is located in said County and State receiving Federal funding.

3

**11.**     Defendant Beau Walker is the Dean of Galena High School and holds the position of head coach of its baseball team / program, and at all times relevant herein, was either a teacher, coach, or dean at the school.

**12.**     Defendant Kyle Ford (hereinafter "Defendant Ford" *inter alia*) at all times relevant herein was a minor child who attends Galena High School, is a member of its baseball team, and is now currently eighteen years of age attending his senior year.

**13.**     Minor Participants  "C.B.", "L.S.", "A.K.", "D.B.", "L.G.", "J.A.", "G.P.", "K.M.", "J.C.", "R.C.", and "D.W." (Minor Defendants *inter alia*), at all times relevant herein were minors who attend Galena High School, are members of the baseball team, and where some may have reached 18 years of age, who participated in or carried out one or more acts of prohibited and unlawful conduct, as specified herein.  Plaintiffs may and will seek leave to amend the Complaint and incorporate them as minor participants as Defendants.

### FACTUAL ALLEGATIONS

**14.**     At all times relevant herein, N.J. was 14-17 years of age, attending Galena High School, until April of this year when he was forced to withdraw.

**15.**     N.J. played baseball at Galena, with Defendant Walker, during his freshman, sophomore, and junior years, withdrawing from the program during his senior year.

**16.**     While participating in the baseball program, N.J. was subjected to severe and pervasive acts of racial discrimination, sexual harassment, bullying, taunting, hazing, intimidation, and infliction of emotional distress, which would be the cause of his departure.

**17.**     At all times relevant herein, Plaintiff, Brooklyn was 15-18 years of age, attending Galena High School, until January of her junior year, when she was forced to withdraw.

4

**18.** Brooklyn could no longer play competitive sports after receiving a medical diagnosis, so she joined the baseball team as its team manager.  Brooklyn's boyfriend Grig, whom she dated for three years during this time, was also a star player on the baseball team.

**19.** While participating in the baseball program, Brooklyn was subjected to severe and pervasive acts of sexual harassment, bullying, stalking, intimidation, and infliction of emotional distress, which would be the cause of her resignation and withdrawal from school.

**20.** Not long after Brooklyn's resignation, Grig died tragically in his car, N.J. was ostracized and isolated, and Brooklyn and her family would endure constant harassment, stalking and intimidation, and even threats of death from Defendant Ford.

**21.** Defendant Walker had notice of each act and expression, as did the school's administration, and despite being mandatory reporters, failed to report same and on the contrary, conspired to hide the truth about the factual allegations and instances delineated herein.

**22.** Plaintiffs N.J. and Brooklyn have been subjected to cumulative trauma as a direct and proximate result of Defendants' actions, which constitute a failure to comply with State and Federal mandates to prohibit such conduct and report its occurrence, a failure to protect, a failure to discipline, and increasing the danger within an already hostile environment.

**23.** Defendants carried out prohibited conduct which include:

- Excessive and demeaning acts of sexual discrimination;
- Blatant and systemic acts of racial discrimination;
- Pervasive bullying and harassment;
- Assault and provoked assault;

5

- Excessive and demeaning sexual harassment, including daily and repetitive taunting by other players, mocking of their sexuality, their sex, sexually objectifying them and acting out sexual acts and expressions, belittling and humiliation based on perceived sexual orientation, sex, and gender identity;

- Lewd acts and expressions, obscenity, indecency, pornography involving minors, exhibition of obscene materials to minors, disseminating intimate images, and bullying by use of electronic communication devices;

- Retaliation for notification of the lewd acts and expressions, and abhorrent and disgusting behavior, that did include libel, harassment, provoking assault, stalking, hazing, obscene, threatening and annoying telephone calls, injury to and defacing certain property;

- Preventing or dissuading team members in their evidence and testimony, intimidating them not to speak up and to destroy all evidence, conspiring, and compounding their crimes; and

- Embezzlement of funds.

24.     Defendants Ford and Minor Defendants used racial slurs and epithets against N.J., calling him "little Mexican," "beaner boy," "boarder-hopper," and "nigger lover," in front of Defendant Walker and other coaches, other players and students.

25.     Defendants Ford and Minor Defendants hazed and harassed N.J., telling him repeatedly that they were going to "fuck him in the ass," and by the end of his junior year, Defendant Walker discriminated against N.J. and joined in the harassment, no longer playing N.J. in baseball games, and not acknowledging him at all.  N.J. would walk past him or try to say hello in the hall and Defendant Walker would ignore him "as though he was a ghost".

6

26.     Defendant N.J. stopped eating, studying, and attending baseball practice, lost over 15 lbs., withdrew from the baseball program, and his grades have suffered.

27.     N.J.'s therapist recently notified the school that he has experienced increasing anxiety and depressive symptoms and has determined that he is qualified to receive reasonable accommodation, and specifically temporary allowance for full-time online learning, per Section 504 of the Rehabilitation Act of 1973, and per the Americans with Disabilities Act of 1990, so that his symptoms do not escalate further.

28.     Defendant Walker was intricately involved in the lives of N.J., Brooklyn, Grig, and each of the Minor Defendants.  The baseball team practiced together, trained together, travelled together, played games together, and conditioned together each off-season, sometimes before *and* after school, as well as in the summer.  For these young men, baseball is their entire life, and their success at Galena would determine whether they could play college baseball.

29.     Defendant Walker utilized Brooklyn as more than just a team manager; he would ask her to watch his kids, take his new truck in for an alignment, have new tires put on it before his hunting trip, get them rotated before family trips, and to run his other personal errands. Defendant Walker shared his personal, marital, and financial issues with Brooklyn.

30.     Brooklyn was responsible for cleaning out the team's lockers at the end of the season, and while doing so, she found documents in Defendant Walker's locker that would implicate his embezzlement of funds, where he took money from one star baseball player's family, cashed it to himself, and used the funds to purchase a new truck, off-road vehicles, and to take his family on vacations.

31.     At the beginning of their junior year, Defendant Ford and Minor Defendants C.B. and L.S. transferred to the team from other schools, and the school and baseball environment

7

went from offensive and harmful to hostile and dangerous.  The young men listed in this Complaint, in conjunction with Defendant Walker, did condone, ratify, and carry out severe and pervasive acts and expressions that were discriminatory, lewd in nature, obscene, and unlawful.

32.     Defendants hazed and harassed N.J. and Brooklyn, as outsiders of the team, and when other players like Grig stood up for Plaintiffs, the conduct would increase in frequency and severity, and in its nature became sexual and aggressive.

33.     The dynamics of the team had changed, and that the locker room became a "playground" for Defendants to bully other minor children, engage in lewd conduct, and violate the privacy rights of other students.

34.     Defendant Ford and Minor Defendants R.C and J.C. were caught yelling at a young boy with special needs who also attended Galena and taunting him while he was performing an ROTC drill, saying, "Look at the retards doing ROTC, fucking faggots."

35.     Defendant Ford engaged in sexually harassing conduct towards Brooklyn, grabbing her body and making sexually explicit comments to her.  He further subjected Brooklyn to taking pictures of her body without her consent and videotaped himself masturbating in her presence.

36.     Brooklyn reported countless incidents involving this lewd and harassing behavior to Defendant Walker, who dismissed her claims and ignored her.  She notified him when Defendant Ford and another student vandalized her car and he also ignored this.

37.     Following repeated harassment by Defendant Ford and many of the other players, and in fear of their continued threats, bullying, and harassment, Brooklyn notified Defendant Walker that she was resigning from her position as baseball team manager.

8

38.     Grig remained on the team and expressed to Brooklyn that he was not doing well – mentally or emotionally, and he told her that if he ever took his own life, it would be in his car. Brooklyn put Defendant Walker and other teachers and staff on notice of what Grig said, but everyone dismissed her warnings.

39.     Around March 15, 2022, Defendant Ford and Minor Defendants C.B., J.C., and L.S. began taking and posting videos and pictures of their teammates, who were minor children at the time, while they were sitting on the toilet with their pants down, using the urinal, and naked taking showers.  They intruded in on the privacy of young men and would publish the photographs and videos to internal text message threads and external social media outlets.

40.     Around March 21, 2022, the baseball team went to southern California for a baseball tournament, and Defendant Walker required that the minor players stay with the coaches, one of which was female, in the "baseball house."  He required that the players' parents travel separately and stay in separate accommodations.

41.     While at the "baseball house" Defendant Ford and Minor Defendants C.B., D.B., J.A., and L.S. carried out acts and expressions of sexual discrimination, harassment, assault, threats, and intimidation, where late at night, after everyone was sleeping, these boys carried out the prohibited and vile acts and expressions against minor children, and produced videos and photographs of child pornography, which they then published to text message threads and social media outlets.

42.     Defendant Ford and Minor Defendants C.B., D.B., J.A., and L.S., with malice and discriminatory intent, took out their penises and their scrotum from their pants, exposing their genitalia, put them on the faces and mouths of other minor boys, pretended to hump them and masturbate to the acts and expressions, videoed their excitement over the acts, and went from

9

room to room, threatening each of the boys, including Plaintiff N.J., to whom they told they were going to "fuck him in the ass."

43.     Plaintiff N.J. locked himself inside of the bathroom and sat on the phone with his parents until 3:30 a.m., when Defendant Ford and Minor Defendants C.B., D.B., J.A., and L.S. finally went to sleep, and he was no longer in fear of what they would do to him.  They had gone from room to room, videoing themselves straddling other boys, humping one, riding on top of him and making sexual advances and actions, with his penis pulled out of his pants and held in his hand, while the young boy tried to push him off and pull the cover over his face, so that he wouldn't be seen in the recording.

44.     Defendant Ford and Minor Defendants C.B., D.B., J.A., and L.S. targeted the minor players who didn't get to play as much in games and tournaments, and specifically those who had been pushed out by Defendant Walker.

45.     Defendant Ford and Minor Defendants C.B., D.B., J.A., and L.S. distributed the child pornography and intimate images of children, on one or more occasions, to one another and also to other minors and adults outside of the team and the school, through various text message channels and other social media outlets, with the intent to embarrass and cause harm to the minor players, and other similarly situated students.

46.     Another player and his parents put Defendant Walker on notice of the incident. Defendant Walker thanked them for letting him know but did not ask to see the evidence.

47.     Around this same time, Minor Defendant L.G. recorded and photographed a minor boy, with special needs, in the bathroom while using the urinal, where the young boy was naked from the waist down and published the media to social media and the group chat.

**48.**     These boys were questioned by administrators, and immediately thereafter, told everyone in the group chat to "destroy all evidence."  Defendant Walker instructed the baseball team to "get their stories straight," "get rid of the evidence," and "deny everything."  The boys threatened the baseball team that they would "beat asses" if any of the minor players said anything, and that "the team needed them."

**49.**     Defendants dismissed the acts and expressions as "normal things that happen on the team," and "boy behavior," and each time incidents were reported, the bullying and harassment would get worse.

**50.**     Brooklyn was forced to withdraw from the school, and finished her junior year at home, isolated, and afraid to even drive near or around the high school.

**51.**     Defendant Ford and Minor Defendants called N.J. a "snitch," and again began harassing him as they believed that he had "ratted them out."

**52.**     Defendant Ford's parents called Plaintiff Jardin and asked if she was "the snitch." Defendants made Plaintiffs' and their families' lives a living hell, where they taunted, harassed, bullied, hazed, intimidated, threatened, assaulted, and spread bullying messages and provoked assault using electronic communication.

**53.**     Around May 4, 2022, Minor participants published messages to a group text thread and social medial outlet entitled:  "The Great Envious Penis! (unicorn emoji, tiger face emoji, Tinkerbelle emoji)," that consisted of the baseball team, and where G.P. did state: "Winners win, losers lose.  (Minor Student)'s a little fuckboy with clown shoes," to which K.M. said, "A niggers a nigger, just like you, that's why (Minor Student) should burn like a Jew," to which another J.C. posted a meme with two "dead" emojis.

11

**54.** Another Minor Defendant wrote in the same group thread, "MORE BEING FUCKING PUSSIES ON THE BASEBALL FIELD.  WE STEP ON THAT SHITTY ASS BITCH ASS SATAN SPAWN CAMPUS THEY CALL SCHOOL AND WE FUCK THEM HARD.  SO HARD THAT THEY REMEMBER THIS BEING THE SHITTIEST GAME THEY'VE EVER PLAYED IN THEIR LIVES.  FUUUUUUUUUUUUUUUUUUUUUUUCK. NO MOR FUCKING PRUSKI.  END HIS LIFE FELLAS.  NO MORE (Minor Student).  SEND HIM TO HELL LIKE THE ORIGINAL KANE.  LITTLE BITCH ASS [*Intentionally omitted minor party*] FAGGOT PUSSY STAIN.  GOD I HATE THEM ALL.  OKAY GUYS SAY A PRAYER WITH ME::::::  Dear God, smite these fucking faggot ass bitch ass faggot stupid bitch ass fucks so hard.  Let my arm morph into a lightning bolt and let every single one of our dudes hit fucking tanks.  Holy shit I love tanks.  Amen.  Alright now that that's finished.  Let's pour our 400 inch monster cocks up their fucking intestines so that they'll be shitting out yellow stained galena cum for months.  Ok?"  To which D.W. replied, "NIGGA SQUAD RAPES GOD SQUAD," to which D.B. replied, "Dear God, smite down these fucking faggot ass bitch ass faggot stupid bitch ass fucks so hard.  Let my arm morph into a lighting bolt and let every single one of our dudes hit fucking tanks.  Holy shit I love tanks.  Amen."

**55.** Defendant Ford and Minor Defendants were "star" players who received constant recognition from Defendant Walker, the team's social media pages, and even local and State newspapers.  And as the hazing and harassment grew worse and worse, so did the mental states of N.J., Brooklyn, and Grig.

**56.** On June 23, 2022, around 11:00 pm, it was reported that Grig was travelling at a high speed in his vehicle when he left the roadway, rolled several times, and had to be extracted by the Fire Department and REMSA.  He died the following day.

57.     Brooklyn was bombarded with threats and false accusations from Defendant Ford and another student, who, through various social media and other communication platforms, taunted and harassed her, saying she was responsible for Grig's death.  They published comments such as, "This is a message for Brooklyn: Stop being a bitch and text us back.  You're the reason that Grig isn't here and you act like nothing is wrong."

58.     On June 30, 2022, Defendant Ford and other members of the team threw eggs and rocks at Brooklyn's house, denting the garage door and damaging the new paint.  Plaintiff Brooklyn and her mother stayed up until early hours of the morning cleaning it up and Brooklyn's mother almost lost her job.  Defendant Ford encouraged and provoked others to carry out violent acts and expressions, and to discriminate, harass, bully, and assault her and her immediate family members.  Defendant Ford again vandalized her car, permanently scratching "I'm a bitch" into its paint.

59.     Brooklyn again notified Defendant Walker, to which he stated, "it wasn't a problem, and that "it needed to go away."  She reported the incidents to School Police, the Sparks Police Department, and school administrators.

60.     In July 2022, Brooklyn became privy to what Defendant Ford and others were saying about her in the group chat: "Fuck that bitch and her fat ass, let's fuck her up and her house, let's kill her and do away with her."  Which led to rational fear of serious bodily harm.

61.     In August 2022, N.J. started his senior year at Galena, with the harassment continuing daily.  Defendant Walker began to separate and isolate N.J. and retaliated against him during the course and scope of baseball games.

62.     N.J. was forced to quit the team, and Defendant Walker told the rest of the players that N.J. was "no longer a Grizz," and that he was "a pussy and a quitter."

13

63.     N.J. and his parents were called into a meeting with the vice principal and one of his teachers to discuss his declining grades and appearance.  Once again put on notice of the incidents, Galena school Administrators failed to further protect N.J. when they notified Defendant Walker, who then called N.J. into his office for further questioning.

64.     Another teacher came forward and provided a statement on behalf of N.J., and she was told by the school's Sports Director that she must retract her statement.

65.     On March 16, 2023, Jane Doe reported the incidents to the State's anonymous tip line, who *still* requested her identity; she put them on notice that she wanted to remain anonymous for fear for her son's safety.

66.     They said they would "do their best," but the next morning N.J. was called into the office and questioned about the call following a gross violation of assurances of anonymity of the reporter.

67.     Immediately thereafter, Brooklyn began receiving obscene and harassing phone calls, and the acts and expressions started again and continue to the present time.

68.     Defendants' collaborative effort to protect the baseball program through Galena Administrators and Defendant Walker, at the cost of students being hazed, tormented, stalked, and physically and sexually harassed and assaulted, creates an unimaginable environment for students with athletic ambitions at Galena High School.

69.     Defendants Ford and a few of the minor boys have recently received awards for their apparent "great year" and "sportsmanship".

70.     Defendants were on notice, were negligent, and acted with malicious intent and conscious disregard for the safety of Plaintiffs, and for their mental health and emotional well-

14

being.  Defendants created a dangerous and hostile environment and allowed Plaintiffs to be harmed.

71.     The parents of other minor students have expressed fear in coming forward in fear of retaliation that their child would be punished or benched and no longer be able to play.

72.     Defendants condoned, tolerated, ratified, and carried out this conduct and failed to perform their duties.

73.     Further, these affirmative acts were combined with a failure to report the incidents for investigation, to the Nevada Accountability Portal, or the Civil Rights Data Collection Website.

74.     As a result of these collective acts, N.J. and Brooklyn did manifest the following somatic and psychosomatic symptoms:

- Difficulty eating, loss of appetite;

- Increased anxiety;

- Panic attacks and fear at school;

- Fear of battery, assault, and harassment;

- Post-traumatic stress symptoms;

- Emotional distress;

- Depressive symptoms; and

- Diminished concentration and academic performance.

75.     At all times relevant herein, the bullies/harassers were minor or adult students under the care, supervision, custody, and protection of Defendants, at the same school and in the same and other classrooms and programs as Plaintiffs N.J. and Brooklyn.

**76.** At all times relevant herein, the condoners/retaliators were adult staff, teachers, coaches, and administrators, under the control, supervision, direction, and authority of Defendants, at the same school and in the same and other classrooms and programs as Plaintiffs N.J. and Brooklyn.

**77.** At all times relevant herein, Defendants were and are a political subdivision of the State of Nevada, existing and operating by virtue of the laws of the County of Washoe, State of Nevada, having and exercising full control, power, and operating oversight of the educational programs and activities at its schools, within its district, while a recipient of Federal funding.

**78.** At all times relevant herein, Defendants acted by and through its teachers, staff, coaches, and administrators, who carried out final decisions and policies regarding the care, supervision, custody, and protection of all minor students, and during this time, Plaintiffs N.J. and Brooklyn have been subjected to, and suffered from, repetitive and unrelenting acts and discrimination on the basis of sex and race, where they were bullied, taunted, harassed, stalked, threatened, intimidated, assaulted, and mentally abused, and where Defendants showed deliberate indifference to their plight, and condoned, ratified, and carried out the prohibited conduct.

**79.** Defendants retaliated through further aggression, bullying through the use of electronic communication, and segregated and isolated Plaintiffs.

**80.** Defendants knew of their duty to prohibit discriminatory conduct, to protect Plaintiffs from harm, and to report discriminatory acts and expressions, by and through each of its published documents, to include, but are not limited to:

Board Policy 4504: Standards of Professional Conduct.

16

Board Policy 4510: Protection of Students – Background Checks & Mandatory Reporting.

Board Policy 4550: Employee Interactions with Students.

Board Policy 5100: Student Behavior.

Board Policy 5625: Student Health and Welfare.

Board Policy 5650: Student Suicide Prevention

Board Policy, 5700: Safe and Respectful Learning Environment.

Board Policy 9051: Board Conduct, Ethics, and Operational Protocols.

Board Policy, 9200: Harassment and Discrimination Prohibited.

Administrative Regulation, 1601: Public Complaints – Response and Resolution.

Administrative Regulation, 2112.1: Evaluation of Administrators.

Administrative Regulation, 4111.5: Safe and Respectful Learning Environment.

Administrative Regulation, 4530: Ethical Standards / Conflict of Interest.

Administrative Regulation, 5140: Student Health and Welfare.

Administrative Regulation, 5326:  District-Recognized Athletics.

Administrative Regulation, 5701: Student Bullying, Discrimination, and/or Harassment.

Administrative Regulation, 5702: Staff on Student Bullying, Discrimination and/or Harassment – Complaint and Appeal Procedures.

Administrative Regulation, 5810: Use of Personal Electronic Devices by Students – Prohibited Conduct.

17

Administrative Regulation, 9201: Title IX Sexual Harassment

Administrative Manual, 5115: Student Behavior.

Administrative Manual, 5315: High School Activities and Athletics Manual.

81.     Plaintiffs relied on the published documents and made reasonable inferences from the same that Defendants would exercise due and reasonable care in the performance of their duties.

82.     Defendants acted with malicious intent, under color of state law, when they failed to mitigate harm, and where Defendants' behavior shocks the conscience.

83.     Defendants failed to report said incidents and engaged in a custom or a policy violating Nevada laws and mandated procedures.

84.     Plaintiffs were subjected to sexual and physical assault that resulted in embarrassment and humiliation, cumulative trauma, damage to reputation and relationships, and emotional distress, and Defendants had knowledge of the risk of harm to Plaintiffs, and the hostile and offensive environment or "state-created danger."

85.     Plaintiffs can only infer from Defendants' acts and omissions that there was/is a failure to train, a no-reporting procedure or a custom of non-reporting, tolerance for discriminatory conduct, and an overall practice of deliberate indifference for the plight of Plaintiffs, and other similarly situated students, in this high school and throughout the Washoe County School District.

86.     Plaintiffs now seek a Declaration from the Court that Defendants violated Plaintiffs' constitutional right to equal protection under the laws and deprived them of their constitutional right to procedural due process; that Defendants acted with conscious disregard

18

and malicious intent, under color of state law, when they failed to protect Plaintiffs, failed to

prohibit the discriminatory conduct, failed to provide a safe and respectful learning environment

free from discrimination and retaliation; failed to adequately report and discipline the conduct;

and that Defendants demonstrated deliberate indifference to Plaintiffs through customs and/or

policies and/or practices and usage so pervasive and widespread as to constitute the force of law.

## **FIRST CAUSE OF ACTION**
### (*DECLARATORY RELIEF UNDER 42 U.S.C. § 1983*)

87.     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and

incorporate them herein by reference as though fully set forth herein.

88.     Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to a Declaration from the

Court that Defendants violated Plaintiffs' constitutional right to equal protection under the laws

and deprived them of their constitutional right to procedural due process; that Defendants acted

with conscious disregard and malicious intent, under color of state law, when they failed to

protect Plaintiffs, failed to prohibit the discriminatory conduct, failed to provide a safe and

respectful learning environment free from discrimination and retaliation; failed to adequately

report and discipline the conduct; and that Defendants demonstrated deliberate indifference to

Plaintiffs through customs and/or policies and/or practices and usage so pervasive and

widespread as to constitute the force of law.

89.     Defendants denied Plaintiffs of their right to equal protection under the law,

excluded them from participation, and denied them benefits of Defendants' educational programs

and activities, violations of which are actionable under 42 U.S.C. § 1983.

**90.** Defendants acted with conscious disregard and malicious intent towards Plaintiffs when they carried out and failed to report the prohibited conduct and were deliberately indifferent to the plight of Plaintiffs, violations of which are actionable under 42 U.S.C. § 1983.

**91.** Defendants deprived Plaintiffs of their right to procedural due process and subsequent procedural safeguards, violations of which are actionable under 42 U.S.C. § 1983.

**92.** Defendants' act and omissions were the direct and proximate cause of harm to Plaintiffs, in violation of their rights and actionable under 42 U.S.C. § 1983.

**93.** Plaintiffs have been required to incur legal-fees and costs in the prosecution of their claim for Declaratory Relief, of which they are entitled to recover pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
### (VIOLATION OF  14TH AMEND. - EQUAL PROTECTION)

**94.** Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

**95.** Whereas the Equal Protection Clause of the Fourteenth Amendment affords Plaintiffs the right to equal protection of the laws, Defendants denied Plaintiffs the right when they, under color of state law, carried out customs and/or policies and/or practices and deliberate indifference, non-reporting, and tolerance for discrimination, on the basis of Plaintiff's sex and/or race.

**96.** Defendants, acting under the color of the law, failed to protect Plaintiffs and rather condoned, tolerated, and carried out the prohibited conduct.

**97.** Defendants' actions were unlawful, unnecessary and unjustified.

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

98.     At all times relevant herein, Defendants exercised substantial control over the minor players and other students, and also of the teachers, coaches, staff, and administrators who acted in a professional capacity when they condoned, ratified, and carried out the prohibited conduct against Plaintiffs, and retaliated in all known contexts, including in their failure to perform their duties.

99.     Defendants' offending customs and/or policies and/or practices and usage arise from an express policy made through the decisions of Defendants' personnel with final policy-making authority, violations of which are actionable under 42 U.S.C. § 1983.

100.     Defendants did not exercise due and reasonable care in the performance of their duties and undermined and detracted from the educational experience of Plaintiffs, creating an offensive and discriminatory environment that became hostile and dangerous, violations of which are actionable under 42 U.S.C. § 1983.

101.     Defendants condoned, ratified, and carried out the prohibited conduct, and excluded and denied Plaintiffs from participation and benefits from Defendants' educational programs and activities, violations of which are actionable under 42 U.S.C. § 1983.

102.     Defendants' acts and expressions were so objectionably offensive that they created an environment where Plaintiffs were in danger and in fact were harmed.  Defendants acts and omissions proximately and directly caused harm to Plaintiffs, violating their Constitutional, Federal, and States' rights, where such danger was foreseeable.

103.     Plaintiffs are entitled to recover from Defendants for all damages directly and/or proximately resulting from the violation of their Constitutional right to equal protection under the law.

104.     Plaintiffs suffered injuries in the exclusion of participation, and denial of benefits of Defendants' educational programs and activities, and the cumulative trauma now and into the future that will require medical and educational analyses, evaluations, and treatments, the cost of which entitles Plaintiffs to special damages in an amount to be proven at time of trial.

105.     Plaintiffs suffered injuries in their emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Plaintiffs claim both past and future damages, in an amount in excess of $75,000.

106.     Plaintiffs suffered injuries, and have and will into the future incur medical, educational, and other expenses for which they are entitled to recover in this action.

107.     Because Defendants' actions, and possibly other employees, agents, and/or representatives of the WCSD, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law.

108.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover against Defendants for all reasonable attorneys' and expert fees expended in prosecuting this action.

### THIRD CAUSE OF ACTION

*(VIOLATION OF  14TH AMEND. – PROCEDURAL DUE PROCESS)*

109.     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

110.     Whereas the Due Process Clause of the Fourteenth Amendment affords Plaintiffs the right to procedural due process, and here, Defendants denied Plaintiffs their right when they, under color of state law, failed to report the discriminatory acts and expressions, and deprived

1
2

Plaintiffs of their subsequent procedural safeguards, violations of which are actionable under 42 U.S.C. § 1983.

3
4
5
6
7
8
9
10

111.    At all relevant times herein, Defendants exercised substantial control over the teachers, coaches, staff, and administrators acting in their professional capacity while failing to respond to the allegations and incidents of bullying, harassment, sexual assault and discrimination; failing to undertake individualized safety and risk analyses and determine the level of threat, need for removal, or other disciplinary actions; failing to treat Plaintiffs, their allegation, and their complaints with support and direction; and failing to report to State and Federal officials, violations of which are actionable under 42 U.S.C. § 1983.

11
12
13
14

112.    Defendants' offending customs and/or policies and/or practices and usage arise from an express policy made through the decisions of Defendants' personnel with final policy-making authority, violations of which are actionable under 42 U.S.C. § 1983.

15
16
17
18
19

113.    Defendants did not exercise due and reasonable care in the performance of their duties and undermined and detracted from the educational experience of Plaintiffs and increased the danger within an already offensive and discriminatory environment, which became hostile and dangerous, violations of which are actionable under 42 U.S.C. § 1983.

20
21
22
23

114.    Defendants condoned, ratified, and carried out the prohibited conduct, and excluded and denied Plaintiffs from participation and benefits from Defendants' educational programs and activities, violations of which are actionable under 42 U.S.C. § 1983.

24
25
26

115.    Defendants' acts and expressions were carried out with such malicious intent that they created an environment where Plaintiffs were in danger and in fact were harmed.

27

**116.**     Defendants acts and omissions proximately and directly caused harm to Plaintiffs, violating their Constitutional, Federal, and States' rights, where such danger was foreseeable.

**117.**     Plaintiffs are entitled to recover from Defendants for all damages directly and/or proximately resulting from the violation of their Constitutional right to procedural due process.

**118.**     Plaintiffs suffered injuries in the denial of subsequent procedural safeguards that ratified the conduct and increased the cumulative trauma now and into the future that will require medical and educational analyses, evaluations, and treatments, the cost of which entitles Plaintiffs to special damages in an amount to be proven at time of trial.

**119.**     Plaintiffs suffered injuries in their emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Plaintiffs claim both past and future damages, in an amount in excess of $75,000.

**120.**     Plaintiffs suffered injuries, and have and will into the future incur medical, educational, and other expenses for which they are entitled to recover in this action.

**121.**     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover against Defendants for all reasonable attorneys' and expert fees expended in prosecuting this action.

## FOURTH CAUSE OF ACTION

### (CLAIM FOR DAMAGES FOR VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 – 20 U.S.C. § 1681 ET SEQ.)

**122.**     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

**123.**     Whereas Title IX of the Education Amendments of 1972 prohibits discriminatory acts and expressions carried out on the basis of sex, gender identity, and sexual orientation or perceived sexual orientation, and mandates that Defendants protect Plaintiffs, and other similarly

24

situated students, from such prohibited conduct, and here, Defendants failed to prohibit the discriminatory conduct, and deprived Plaintiffs of an education in an environment free of sexual discrimination, a violation which is actionable under 20 U.S.C. § 1681 *et seq.*

124.   At all times relevant herein, Defendants exercised substantial control over the minor players and other students, the teachers, coaches, staff, and administrators acting in their professional capacity while condoning, ratifying, and carrying out discriminatory acts and expressions against Plaintiffs, on the basis of their sex, and retaliating in all known contexts, including in the failure to perform their duties, violations of which are actionable under 20 U.S.C. § 1681 *et seq.*

125.   Defendants' offending customs and/or policies and/or practices and usage arise from an express policy made through the decisions of Defendants' personnel with final policy-making authority, violations of which are actionable under 20 U.S.C. § 1681 et seq.

126.   Defendants did not exercise due and reasonable care in the performance of their duties and undermined and detracted from the educational experience of Plaintiffs, creating an offensive and discriminatory environment that did become hostile and dangerous, violations of which are violations of which are actionable under 20 U.S.C. § 1681 et seq.

127.   Defendants condoned, ratified, and carried out the prohibited conduct, and excluded and denied Plaintiffs from participation and benefits from Defendants' educational programs and activities, violations of which are actionable under 20 U.S.C. § 1681 et seq.

128.   Defendants failed to mitigate harm and lessen the state-created danger, having actual knowledge and notice of the incidents and occurrences of discriminatory conduct, violations of which are actionable under 20 U.S.C. § 1681 et seq.

129.     Defendants had final authority and decision-making capacity to identify, address, halt, report, and further investigate all discriminatory acts and expressions, incidents, occurrences, and allegations, and to initiate corrective and preventative measures on behalf of Plaintiffs.

130.     Defendants' deliberate indifference of and discrimination towards Plaintiffs created a hostile and offensive environment with increased danger, which was the direct and proximate cause of the violation Plaintiffs' constitutional rights, and where the danger was foreseeable.

131.     Plaintiffs are entitled to recover from Defendants for all damages directly and/or proximately resulting from the violation of their rights.

132.     Plaintiffs suffered injuries in the exclusion of participation, and denial of benefits of Defendants' educational programs and activities, and the cumulative trauma now and into the future that will require medical and educational analyses, evaluations, and treatments, the cost of which entitles Plaintiffs to special damages in an amount to be proven at time of trial.

133.     Plaintiffs suffered injuries in their emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Plaintiffs claim both past and future damages, in an amount in excess of $75,000.

134.     Plaintiffs suffered injuries, and have and will into the future incur medical, educational, and other expenses for which they are entitled to recover in this action.

135.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover against Defendants for all reasonable attorneys' and expert fees expended in prosecuting this action.

### FIFTH CAUSE OF ACTION

*(CLAIM FOR DAMAGES FOR VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000d ET SEQ.)*

136.    Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

137.    Whereas Title VI of the Civil Rights Act mandates that Defendants prohibit discriminatory conduct, and specifically, that no person shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance, and here, Defendants failed to prohibit the discriminatory conduct, and denied Minor Plaintiff his right to be educated in an environment free of racial discrimination, and condoned, ratified, and carried out the prohibited conduct, a violation which is actionable under 42 U.S.C. § 2000d et seq.

138.    At all times relevant herein, Defendants exercised substantial control over the minor players and other students, the teachers, coaches, staff, and administrators acting in their professional capacity while condoning, ratifying, and carrying out discriminatory acts and expressions against N.J., on the basis of his race, and retaliating in all known contexts, including in the failure to perform their duties, violations of which are actionable under 42 U.S.C. § 2000d et seq.

139.    Defendants' offending customs and/or policies and/or practices and usage arise from an express policy made through the decisions of Defendants' personnel with final policy-making authority, violations of which are actionable under 42 U.S.C. § 2000d et seq.

140.    Defendants did not exercise due and reasonable care in the performance of their duties and undermined and detracted from the educational experience of Minor Plaintiff, creating

27

an offensive and discriminatory environment that became hostile and dangerous, violations of which are violations of which are actionable under 42 U.S.C. § 2000d et seq.

141. Defendants condoned, ratified, and carried out the prohibited conduct, and excluded and denied Minor Plaintiff from participation and benefits from Defendants' educational programs and activities, violations of which are actionable under 42 U.S.C. § 2000d et seq.

142. Defendants failed to mitigate harm and lessen the state-created danger, having actual knowledge and notice of the incidents and occurrences of discriminatory conduct, violations of which are actionable under 42 U.S.C. § 2000d et seq.

143. Defendants had final authority and decision-making capacity to identify, address, halt, report, and further investigate all discriminatory acts and expressions, incidents, occurrences, and allegations, and to initiate corrective and preventative measures on behalf of Minor Plaintiff.

144. Defendants' deliberate indifference of and discrimination towards Minor Plaintiff created a hostile and offensive environment with increased danger, which was the direct and proximate cause of the violation of Minor Plaintiffs' constitutional rights, and where the danger was foreseeable.

145. Plaintiffs are entitled to recover from Defendants for all damages directly and/or proximately resulting from the violation of their rights.

146. Minor Plaintiff suffered injuries in the exclusion of participation, and denial of benefits of Defendants' educational programs and activities, and the cumulative trauma now and

into the future that will require medical and educational analyses, evaluations, and treatments, the cost of which entitles Minor Plaintiff to special damages in an amount to be proven at time of trial.

147.   Minor Plaintiff suffered injuries in his emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Minor Plaintiff claims both past and future damages, in an amount in excess of $75,000.

148.   Minor Plaintiff suffered injuries, and Plaintiff Jane Doe, in her individual capacity, has and will into the future incur medical, educational, and other expenses for which she is entitled to recover in this action.

149.   Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover against Defendants for all reasonable attorneys' and expert fees expended in prosecuting this action.

### SIXTH CAUSE OF ACTION

*(ASSAULT AGAINST DEFENDANT FORD)*

150.   Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

151.   Whereas NRS 200.471 prohibits assault, and where Defendant Ford assaulted both Plaintiffs N.J. and Brooklyn, when he, on more than one occasion, unlawfully attempted to use physical force against Plaintiffs and did intentionally place them each in reasonable apprehension of imminent danger of immediate bodily harm.

152.   Plaintiffs did not consent to Defendant Ford's conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendant Ford, whose acts were

directed and ratified by Defendants collectively, Plaintiffs suffered damages, the exact amount which will be proven at trial.

153.    The intentional conduct of Defendant Ford was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiffs' rights and safety that punitive damages are warranted.

154.    That it has become necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

## SEVENTH CAUSE OF ACTION

### *(PROVOKING ASSAULT AGAINST DEFENDANT FORD)*

155.    Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

156.    Whereas NRS 200.490 prohibits provoking assault, and where Defendant Ford provoked assault against both Plaintiffs N.J. and Brooklyn, when he, on more than one occasion, through words, signs, and gestures, did willfully provoke, or attempt to provoke, one or more persons to assault each Plaintiff.

157.    Plaintiffs did not consent to Defendant Ford's conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendant Ford, whose acts were directed and ratified by Defendants collectively, Plaintiffs suffered damages, the exact amount which will be proven at trial.

158.    The intentional conduct of Defendant Ford was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiffs' rights and safety that punitive damages are warranted.

**159.**     That it has become necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

## EIGHTH CAUSE OF ACTION

### *(LIBEL AGAINST DEFENDANT FORD)*

**160.**     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

**161.**     Whereas NRS 200.510 prohibits libel, and where Defendant Ford  acted in a libelous when he, with malicious intent, defamed Plaintiff Brooklyn, and impeached her honesty, integrity, virtue, and reputation, and published her natural defects to expose her to public hatred, contempt, and ridicule.

**162.**     Plaintiff Brooklyn did not consent to Defendant Ford's conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendant Ford, whose acts were directed and ratified by Defendants collectively, Plaintiff Brooklyn suffered damages, the exact amount which will be proven at trial.

**163.**     The intentional conduct of Defendant Ford was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiff Brooklyn's rights and safety that punitive damages are warranted.

**164.**     That it has become necessary for Plaintiff Brooklyn to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

## NINTH CAUSE OF ACTION

### *(HARASSMENT AGAINST DEFENDANT FORD AND ALL MINOR DEFENDANTS)*

31

**165.**     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

**166.**     Whereas NRS 200.571 prohibits harassment, and where Defendants harassed Plaintiffs N.J. and Brooklyn when they, without lawful authority, knowingly threatened to cause bodily injury in the future to Plaintiffs, threatened to cause physical damage to their property, and on one or more occasions carried out acts and expressions which were intended to substantially harm Plaintiffs, with respect to their physical and mental health and safety, and where Plaintiffs had reasonable fear that the threat would be carried out.

**167.**     Plaintiffs did not consent to Defendants' conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendants, whose acts were directed and ratified by Defendants collectively, Plaintiffs suffered damages, the exact amount which will be proven at trial.

**168.**     The intentional conduct of Defendants was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiffs' rights and safety that punitive damages are warranted.

**169.**     That it has become necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

**TENTH CAUSE OF ACTION**

***(STALKING AGAINST DEFENDANT FORD)***

**170.**     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

32

**171.** Whereas NRS 200.575 prohibits stalking, and where Defendant Ford stalked Plaintiff Brooklyn when he, without lawful authority, willfully and maliciously engaged in a course of conduct directed towards Plaintiff Brooklyn, causing her to feel terrorized, frightened, intimidated, harassed, and fearful for her immediate safety, and the immediate safety of her family or household members.

**172.** Plaintiff Brooklyn did not consent to Defendant Ford's conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendant Ford, whose acts were directed and ratified by Defendants collectively, Plaintiffs suffered damages, the exact amount which will be proven at trial.

**173.** The intentional conduct of Defendant Ford was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiff Brooklyn's rights and safety that punitive damages are warranted.

**174.** That it has become necessary for Plaintiff Brooklyn to retain the services of legal counsel for which she is entitled to recover such costs and expenses from Defendants.

**ELEVENTH CAUSE OF ACTION**

*(STALKING TO CAUSE HARM AGAINST DEFENDANT FORD)*

**175.** Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

**176.** Whereas NRS 200.575 prohibits stalking to cause harm, and where Defendant Ford stalked Plaintiff Brooklyn with the use of internet, email, and text messages, to publish, display, and distribute information in a manner that substantially increased the risk of harm or violence to Plaintiff Brooklyn, to where she has an ongoing, reasonable fear of physical harm.

33

177.     Plaintiff Brooklyn did not consent to Defendant Ford's conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendant Ford, whose acts were directed and ratified by Defendants collectively, Plaintiff Brooklyn suffered damages, the exact amount which will be proven at trial.

178.     The intentional conduct of Defendant Ford was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiff Brooklyn's rights and safety that punitive damages are warranted.

179.     That it has become necessary for Plaintiff Brooklyn to retain the services of legal counsel for which she is entitled to recover such costs and expenses from Defendants.

## TWELFTH CAUSE OF ACTION

### *(HAZING AGAINST DEFENDANT FORD AND ALL MINOR DEFENDANTS)*

180.     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

181.     Whereas NRS 200.605 prohibits hazing, and where Defendants hazed Plaintiff N.J., subjected him to brutal treatment, and intentionally and/or recklessly endangered his physical and mental health, as means of initiation, and being accepted into the baseball "team," and when Plaintiff N.J. did not participate, or when another minor player reported the acts and expressions, Plaintiff N.J. was pushed out, excluded, separated, and isolated.

182.     Plaintiff N.J. did not consent to Defendants' conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendants, whose acts were directed and ratified by Defendants collectively, Plaintiff N.J. suffered damages, the exact amount which will be proven at trial.

34

**183.**   The intentional conduct of Defendants was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiff N.J.'s rights and safety that punitive damages are warranted.

**184.**   That it has become necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

**THIRTEENTH CAUSE OF ACTION**

***(BULLYING BY USE OF ELECTRONIC COMMUNICATION DEVICE AGAINST DEFENDANT FORD AND ALL MINOR DEFENDANTS)***

**185.**   Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

**186.**   Whereas NRS 200.900 prohibits bullying by use of an electronic communication device, and where Defendants bullied Plaintiffs by use of electronic communications devices when they knowingly and willfully used an electronic communications device to transmit or distribute one or more images of bullying committed against Plaintiffs, with the intent to encourage and further promote bullying, and an intent harm to Plaintiffs.

**187.**   That Defendants used electronic communication devices to unlawfully disseminate unlawfully obtained images and transmitted said images with the intent to bully Plaintiffs.

**188.**   Plaintiffs did not consent to Defendants' conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendants, whose acts were directed and ratified by Defendants collectively, Plaintiffs suffered damages, the exact amount which will be proven at trial.

**189.**     The intentional conduct of Defendants was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiffs' rights and safety that punitive damages are warranted.

**190.**     That it has become necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

## FOURTEENTH CAUSE OF ACTION

### *(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT FORD AND ALL MINOR DEFENDANTS)*

**191.**     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

**192.**     Defendants' intentional and reckless acts and omissions described herein were extreme and outrageous and intentionally conducted to cause emotional distress to Plaintiffs.

**193.**     Plaintiffs did not consent to Defendants' intentional and reckless conduct.

**194.**     As a direct and proximate result of the malicious and intentional conduct by Defendants, whose acts were directed and ratified by Defendants collectively, Plaintiffs suffered extreme emotional distress and damages, the exact amount which will be proven at trial.

**195.**     The intentional conduct of Defendants was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiffs' rights and safety that punitive damages are warranted.

**196.**     That it has become necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

## **FIFTEENTH CAUSE OF ACTION**

### *(NEGLIGENT HIRING, RETENTION, AND SUPERVISION AGAINST DEFENDANT WCSD)*

**197.**    Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

**198.**    Defendants Walker and WCSD owed several duties to Plaintiffs, including, but not limited to, the following:

**A.**    The duty to keep Plaintiffs safe from the negligent and/or criminal acts of its employees or third parties.

**B.**    The duty to provide responsible teachers, coaches, staff, and administration.

**C.**    The duty to act reasonably under the circumstances.

**D.**    The duty to take action to control the wrongful acts of its employees and associates when it had reason to anticipate such acts.

**199.**    Defendants breached their duties owed to Plaintiffs.

**200.**    Defendants breached their duties in that they failed to appropriately hire, train, and supervise teachers, coaches, staff, and administration, and failed to provide a safe and secure learning environment for their students, violations of which are actionable under Title 34.

**201.**    As a direct and proximate result of these breaches, Plaintiffs have suffered damages in an exact amount to be proven at trial.

37

202.	The failures of Defendant WCSD to hire, train, and maintain a proper teaching staff was intentional and so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiffs' rights and safety that punitive damages are warranted.

203.	That it has been necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

## SIXTEENTH CAUSE OF ACTION

### *(NEGLIGENCE AGAINST ALL DEFENDANTS)*

204.	Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

205.	Whereas Chapter 388 of the Nevada Revised Statutes mandates that Defendants prohibit discriminatory acts and expressions carried out on the basis of sex, and to protect Plaintiffs, and other similarly situated students, from such prohibited conduct.

206.	Whereas Title 34 of the Nevada Revised Statutes mandates that Defendants: (i) create a board of trustees, with rights and powers necessary to control public education, (ii) hire, train, oversee, supervise, discipline, and license Defendants' schools, teachers, staff, and administration; (iii) create and provide a safe and respectful learning environment for each pupil; (iv) prohibit and stop bullying, harassment, and discrimination; (v) identify, report, investigate, halt, and discipline acts and expressions that violate Plaintiffs' rights; (vi) establish and maintain school safety teams and safe school environments; (vii) provide counseling and other services; (viii) report all data to state and federal agencies for review and oversight; and (ix) adhere to the Nevada Model code of Educator Ethics.  *See generally*, NRS 385.005, 386.010, 388.132, 391, 391A, 388.132, 391.2055, 391.2056.

38

**207.**   These mandates created a duty of care on Defendants which they breached.

**208.**   Here, Defendants were negligent and acted with deliberate indifference when they, under color of state law, breached and failed in the performance of their duties, and where such behavior shocks the conscience, and demonstrates a discriminatory and dangerous environment found within the Washoe County School District, violations of which are actionable under NRS 385 et seq., NRS 385A et seq., NRS 386 et seq., NRS 388 et seq., NRS 391 et seq., and NRS 392 et seq.

**209.**   Defendants were negligent and acted under color of state law when they failed to control the local public education, and condoned, ratified, and carried out discriminatory acts and expressions against Plaintiffs, violations of which are actionable under NRS 385 et seq., NRS 385A et seq., NRS 386 et seq., NRS 388 et seq., NRS 391 et seq., and NRS 392 et seq.

**210.**   Defendants were negligent and acted under color of state law when they failed to act as stewards and guardians of the laws, the values, and the procedures of the Washoe County School District, and expressed inappropriate and unprofessional behavior and tolerated incivility and disrespect to Plaintiffs, and similarly situated students, violations which are actionable under NRS 385 et seq., NRS 385A et seq., NRS 386 et seq., NRS 388 et seq., NRS 391 et seq., and NRS 392 et seq.

**211.**   Defendants were negligent and acted under color of state law when they failed to provide a safe and respectful learning environment, and tolerated the bullying, harassment, and discrimination of Plaintiffs, on the basis of sex, and where Defendants failed to adequately identify and report the discriminatory conduct, violations of which are actionable under

actionable under NRS 385 et seq., NRS 385A et seq., NRS 386 et seq., NRS 388 et seq., NRS 391 et seq., and NRS 392 et seq.

212.    Defendants were negligent and acted under color of state law when they failed to provide Plaintiffs with quality instruction not negatively impacted by poor attitudes among teachers, staff, and administration, and where Defendants failed to mitigate the harm, and Plaintiffs were further harmed, violations which are actionable under NRS 385 et seq., NRS 385A et seq., NRS 386 et seq., NRS 388 et seq., NRS 391 et seq., and NRS 392 et seq.

213.    Defendants were negligent and acted under color of state law when they failed to act professionally and ethically when dealing with Plaintiffs, and failed to maintain appropriate boundaries of authority, and where Defendants failed to foster empathy and support for and encouragement of Plaintiffs, violations which are actionable under NRS 385 et seq., NRS 385A et seq., NRS 386 et seq., NRS 388 et seq., NRS 391 et seq., and NRS 392 et seq.

214.    Defendants were negligent and acted under color of state law when they failed to adhere to the Nevada Model Code of Educator Ethics and failed to provide counseling and other services and resources to Plaintiffs, violations which are actionable under NRS 385 et seq., NRS 385A et seq., NRS 386 et seq., NRS 388 et seq., NRS 391 et seq., and NRS 392 et seq.

215.    Defendants had a duty to promptly respond to all complaints, incidents, notices and allegations of prohibited conduct, and undertake safety and risk analyses, determine the justified license revocation of a teacher, staff, coach, administrator, or student, and where Defendants must treat all such claims without bias or discrimination on the basis of sex, and failed to file Federal complaints.

216.    Defendants breached the duty of care owed to Plaintiffs by engaging in the abovementioned conducted repeated and realleged throughout the foregoing Complaint.

217.    Defendants' negligent actions, and their deliberate indifference to Plaintiffs shocks the conscience and demonstrates a discriminatory and dangerous environment found within the Washoe County School District.

218.    Defendants' negligence and deliberate indifference caused actual and proximate damages and harm, and Plaintiffs suffered injuries and cumulative trauma now and into the future that will require medical and educational analyses, evaluations, and treatments, the cost of which entitles Plaintiffs to special damages in an amount to be proven at time of trial.

219.    Defendants' negligence and deliberate indifference caused actual and proximate damages and harm, and Plaintiffs suffered injuries and emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Plaintiffs claim both past and future damages, in an amount in to be provided at the time of trial.

220.    Defendants' negligence and deliberate indifference caused actual and proximate damages and harm, and Plaintiffs have and will into the future incur medical, educational, and other expenses for which they are entitled to recover from.

221.    The intentional conduct of Defendants was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiffs' rights and safety that punitive damages are warranted.

222.    That it has become necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

41

## SEVENTEENTH CAUSE OF ACTION

### *(CONSPIRACY AGAINST DEFENDANT WALKER, FORD, AND ALL MINOR DEFENDANTS)*

223.     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them herein by reference as though fully set forth herein.

224.     Whereas NRS 199.480 prohibits two or more persons from conspiring to commit unlawful acts, commit acts injurious to public health and morals, and accomplish any unlawful purpose.

225.     Defendants Walker, , Ford and other Minor Defendants did conspire to commit and coverup the unlawful acts as alleged herein and did prevent Plaintiffs from participation and benefiting from Defendants' educational programs and opportunities.

226.     Defendants Walker, Ford, and other Minor Defendants did, with willful and malicious intent, conspire to commit unlawful acts when they did conspire to and did carry out acts and expressions of harassment, discrimination, and retaliation against Plaintiffs, and where they did conspire to and did destroy evidence and lie about their actions.

227.     Defendants Walker, Ford, and other Minor Defendants did, with willful and malicious intent, conspire to commit act injurious to public health and morals when they did conspire to commit and carry out sexual harassment and lewd acts of an obscene and offensive nature onto Plaintiffs and other similarly situated students.

228.     Defendants Walker, Ford, and other Minor Defendants did, with willful and malicious intent, conspire to accomplish any unlawful purpose when they did conspire to commit and carry out stalking Plaintiffs, vandalizing their property, and place them in imminent and reasonable fear of harm, while covering up such actions so that they could play baseball.

42

229.     Plaintiffs did not consent to Defendants' conduct, and as a direct and proximate result of the malicious and intentional conduct by Defendants, whose acts were directed and ratified by Defendants collectively, Plaintiffs suffered damages, the exact amount which will be proven at trial.

230.     The intentional conduct of Defendants was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Plaintiffs' rights and safety that punitive damages are warranted.

231.     That it has become necessary for Plaintiffs to retain the services of legal counsel for which Plaintiffs are entitled to recover such costs and expenses from Defendants.

## EIGHTEENTH CAUSE OF ACTION

### (42 U.S.C. §1983 – MONELL LIABILITY AGAINST WCSD AND WALKER)

232.     The Plaintiff hereby incorporates by reference the preceding allegations as if fully set forth herein.

233.     The WCSD is the school district for Washoe County, Nevada.

234.     Municipal liability can attach under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*, for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).*

235.     If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under Monell. *See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).*

236.     Defendant Walker as the baseball coach and teacher in charge of all minor activities for the baseball team at Galena High School , has a custom, pattern, practice, and/or

procedure of conspiring with other team members, and allowing them to bully, harass and assault, individuals such as Plaintiffs herein.

237.     When these Defendants commit acts of violence, hazing and harassment, while attending Galena High School, Defendant Walker would ratify their unconstitutional acts and assist in covering up the Defendant student's bad actions by isolating and segregating Plaintiffs herein, who fell victims to these Defendants crimes.

238.     As evidence of the above-stated custom, pattern, practice, and/or procedure, the WCSD knew that Defendant Walker was covering for these students and placed the athletic program above the safety of Plaintiffs.

239.     Moreover, Defendant Walker was aware that civil rights violations, criminal acts, and other egregious misconduct had been carried out by his students, but no action had been taken by him to rectify the situation.

240.     Consistent with and as a result of WCSDs customs, patterns, practices, and/or procedures, Defendant Walker unjustifiably and unlawfully allowed, ratified and collaborated with minor Defendants to engage in such conduct against Plaintiffs.

241.     As a direct and proximate result of the WCSD's customs, patterns, practices, and/or procedures, as stated herein above, the Plaintiffs' rights guaranteed to them, by the United States Constitution, were violated.

242.     As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs have suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

243.     Pursuant to *Monell v. Department of Social Services of New York, 436 U.S. 658 (1978),* Washoe County School District, through its policymaker, Defendant Walker (and

44

possibly other policymakers whose identities are not yet known) is liable for the harms and losses sustained by Plaintiffs herein.

## **EIGHTEENTH CAUSE OF ACTION**

### *(PUNITIVE DAMAGES AGAINST ALL DEFENDANTS)*

**244.**    Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

**245.**    That the acts of Defendants were intentional, wanton, malicious, willful, and oppressive and done for the sole purpose of embarrassing, ridiculing, humiliating, hurting, and injuring Plaintiffs, such that Plaintiffs are entitled to punitive damages in an amount triple compensatory, incidental and consequential damages.

**Wherefore, Plaintiffs pray for judgement against Defendants as follows:**

**1.**    Plaintiffs seek a Declaration from the Court that Defendants have violated Plaintiffs' constitutional right to equal protection and procedural due process;

**2.**    For damages against Defendants for violation of Title IX of the Education Amendments of 1972 – *20 U.S.C. § 1681 Et Seq.*

**3.**    For damages against Defendants for violation of Title VI of the Civil Rights Act – *42 U.S.C. § 2000d Et Seq.*

**4.**    For special damages, both past and future, in an amount in excess of $75,000.00 against Defendants.

**5.**    For general damages, both past and future, in an amount in excess of $75,000.00 against Defendants.

**6.** For compensatory damages directly and proximately caused by the acts/omissions of Defendants.

**7.** For punitive damages in the amount to be requested at trial.

**8.** For reasonable attorney and expert fees and costs pursuant to 42 U.S.C. § 1988, 20 U.S.C. § 1681, and 29 U.S.C. § 794a.

**9.** For such other and further relief as this court deems proper.

**DATED** this 29th day of June 2023.

**CHATTAH LAW GROUP**

*/s/ Sigal Chattah*
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Attorneys for Plaintiffs

**JOEY GILBERT LAW**

*/s/ Joseph S. Gilbert*
JOSEPH S. GILBERT, ESQ.
Nevada State Bar No.: 9033
405 Marsh Avenue
Reno, Nevada 89501