UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BROOKLYN TONI, *et al.*, | Case No. 3:23-cv-00229-MMD-CLB |
| Plaintiffs, | ORDER |
| v. | |
| WASHOE COUNTY SCHOOL DISTRICT, *et al.*, | |
| Defendants. | |

## I.    SUMMARY

Plaintiffs Brooklyn Toni and Dominique Jardin, as a guardian filing on behalf of minor Plaintiff N.J., bring eighteen causes of action pertaining to alleged hazing, harassment, sexual assault, and discrimination by players on the Galena High School varsity baseball team against Defendants Washoe County School District ("WCSD"), Beau Walker, the baseball coach and dean of students at Galena High School, and Kyle Ford, a former member of the baseball team. (ECF No. 14 ("Complaint").) Before the Court are WCSD's motion to dismiss the claims Plaintiffs assert against WCSD (ECF No. 24)[1] and motion to strike (ECF No. 25)[2] portions of Plaintiffs' Complaint. As further explained below, the Court will grant the motion to strike in part to the extent WCSD and Ford seek to strike allegations against nonparties to this case. The Court will also grant WCSD's motion to dismiss as to Plaintiffs' Constitutional claims and state-law negligence claims, but deny it as to Plaintiffs' Title IX claim and N.J.'s Title VI claim.

///

---

[1]Plaintiffs responded (ECF No. 28) and WCSD replied (ECF No. 31).

[2]Ford joined this motion. (ECF No. 26.) Plaintiffs responded (ECF No. 27) and WCSD replied (ECF No. 29). Ford also joined WCSD's reply. (ECF No. 30.)

## II. BACKGROUND

The following allegations are adapted from the Complaint. Plaintiffs were both students involved with the boys baseball team at Galena High. N.J., who is male, played on the baseball team for three years, but was forced to leave it his senior year. (ECF No. 14 at 4.) Toni, who is female, was the team manager. (*Id.* at 5.) She was also forced to leave that role eventually. (*Id.* at 8.)

Ford and other boys on the team called N.J. racist slurs and repeatedly threatened to rape him in a way suggesting they were attacking his perceived sexual orientation. (*Id.* at 6.) Walker, the coach, joined in the boys' harassment of N.J. and eventually benched him. (*Id.* at 6-7.)

Ford sexually assaulted Toni. (*Id.* at 8.) Toni reported this and 'countless' other lewd and harassing incidents to Walker, but he ignored her. (*Id.*) Toni eventually left her role as team manager and was forced to drop out of school all together. (*Id.* at 8-9, 11.)

In March 2022, the team travelled to a tournament in Southern California, and Walker made all the players stay together in a 'baseball house.' (*Id.* at 9.) Ford and other boys on the team sexually assaulted N.J. and other boys on the team one night at the baseball house. (*Id.* at 9-10.) Ford and the other boys again threatened to rape N.J. (*Id.* at 10.) N.J. was so scared that he locked himself in a bathroom and sat on the phone with his parents until all the other boys went to bed. (*Id.* at 10.) Another player and his parents told Walker about this incident, and while Walker thanked them for letting him know, he did not take any other action in response to the incident. (*Id.*) When N.J. subsequently left the team, Walker disparaged him to the other players. (*Id.* at 13.)

Toni dated a boy on the team named Grig who tragically died in a car crash. (*Id.* at 12.) After Grig's death, Ford taunted and harassed Toni, blaming her for Grig's death. (*Id.* at 12-13.) Ford led other members of the team to Toni's house. (*Id.* at 13.) Ford and the other boys vandalized Toni's house and car. (*Id.*) Toni told Walker about this, too, but he said it was not a problem, and that it needed to go away. (*Id.*) After this, Toni learned that

Ford was telling other boys in a group chat that he wanted to kill her. (*Id.* at 13.) Toni continues to be harassed to this day. (*Id.* at 14.)

Both Toni and N.J. have suffered as a result of all of this. (*Id.* at 15.)

**III.    DISCUSSION**

The Court first addresses WCSD's motion to strike, and then WCSD's motion to dismiss.

**A.  Motion to Strike**

WCSD moves to strike several paragraphs of the Complaint for including scandalous and immaterial allegations regarding the alleged conduct of other minor members of the Galena High baseball team, and some other paragraphs directed at parties to this case for containing offensive language. (ECF No. 25.) Defendant Ford, but not Defendant Walker, joins the motion to strike and WCSD's reply. (ECF Nos. 26, 30.) Ford focuses specifically on allegations involving him, contending they include scandalous details that are not strictly necessary. (ECF No. 26 at 2-3.) Plaintiffs' response is hard to follow, but the gist of it seems to be that the scandalous nature of the allegations they included in their Complaint only underlines the gravity of those allegations, and to the extent some of the allegations they included in their Complaint are immaterial, they provide necessary context for other allegations included in the Complaint. (ECF No. 27.) The Court agrees with WCSD as to the allegations against nonparties to the case, but declines to strike any allegations directed at Walker and Ford, regardless of how scandalous they might be.

Federal Rule of Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is to avoid "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). But "[m]otions to strike are generally regarded with disfavor." *Roadhouse v. Las Vegas*

3

*Metro. Police Dep't*, 290 F.R.D. 535, 543 (D. Nev. 2013) (quoting *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)). To elaborate, "[a] federal court will not exercise its discretion under Rule 12(f) to strike a pleading unless the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Ollier v. Sweetwater Union High Sch. Dist.*, 735 F. Supp. 2d 1222, 1223 (S.D. Cal. 2010), *aff'd*, 768 F.3d 843 (9th Cir. 2014) (citation omitted).

The Court finds that the allegations in paragraphs 13, 47, 53 and 54 are either immaterial or impertinent, as well as the references to nonparties in paragraphs 34 and 43.[3] A matter is "immaterial" if it has "no bearing on the controversy before the court." *In re 2TheMart.com*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (citing *Fantasy*, 984 F.2d at 1527). Allegations are "impertinent" if they are "not responsive or irrelevant to the issues that arise in the action and which are inadmissible as evidence." *Id.* (citation omitted) Indeed, the Court finds that the continued inclusion of these paragraphs in the Complaint confuses the issues subject to litigation in this case. *See Ollier*, 735 F. Supp. 2d at 1223 (noting that confusing the issues can be a proper basis to strike portions of pleadings). Said otherwise, these paragraphs are either immaterial or impertinent because they have no bearing on the controversy before the Court.

The Court begins with paragraph 13. In it, Plaintiffs confusingly and interchangeably define other minor members of the baseball team as "Minor Participants" and "Minor Defendants." (ECF No. 14 at 4.) But they are not Defendants. (ECF Nos. 15, 16 (indicating that WCSD and Ford waived service), 18 (answering on behalf of Walker).) Indeed, Plaintiffs explain in response to the motion to strike that the only difference between their initial complaint and the Complaint is that they, "removed the many minor students contained therein, for purposes of expediency and clarity, as including so many unidentified minors was proving both timely and difficult." (ECF No. 27 at 2.) Thus, there is no dispute that all of the "Minor Participants" are simply not parties to this case. One

---

[3]The Court only addresses herein specific paragraphs that WCSD seeks to strike in its motion.

4

cannot allege claims against nonparties. However, Plaintiffs did not remove all of the references to them throughout the rest of the Complaint, which still states that certain claims are alleged against "Minor Defendants" or just "Defendants," and otherwise includes allegations of misconduct against these other nonparty minors. Paragraph 13 accordingly confuses the issues and the Court strikes it for that reason.

Paragraphs 47, 53 and 54 are immaterial or impertinent because they allege objectionable conduct against nonparties that does not relate to any alleged harassment of, or discrimination against, Plaintiffs.

The same goes for the references to "and Minor Defendants R.C and J.C." in paragraph 34 (ECF No. 14 at 8:12); and "and Minor Defendants C.B., D.B., J.A., and L.S." in paragraph 43 (*id.* at 10:5). These individuals are not parties to this case, so what they did or did not do is immaterial. Plaintiffs could have instead used a generic reference such as, "and other boys" to indicate that Ford was not the only person engaged in objectionable conduct, but either chose not to or declined to adequately edit their Complaint when they decided to remove most of the baseball player defendants from the initial version of their complaint. Either way, Plaintiffs have introduced substantial confusion, impertinence, and immateriality into their Complaint by alleging misconduct against specified nonparties.

The Court attempts to partially remedy these issues by granting WCSD's motion to strike in part as to the paragraphs discussed above—though the issue of confusing references to "Minor Defendants" and "Defendants" exists in many portions of the Complaint that WCSD does not specifically target in its motion to strike. For any paragraphs that WCSD did not challenge, the Court will construe the Complaint as only alleging claims against parties by reading out references to nonparties, but declines to line-edit the Complaint, and will not direct the Clerk of Court to strike the numerous other unchallenged but false references to "Minor Defendants" throughout.

However, the Court denies the motion to strike as to paragraphs 24, 30, 38, 42, 45, 55, 57, 58, 60, and 62, along with paragraphs 34 and 43 except for the references to nonparties noted above. WCSD and Ford argue these allegations are scandalous and

include too much detail, but do not dispute that they are allegations against Ford and Walker. (ECF Nos. 25, 26.) "'Scandalous' allegations are those that 'cast a cruelly derogatory light on a party or other person.'" *Wakefield v. Olenicoff*, Case No. SACV122077AGRNBX, 2013 WL 12126116, at *3 (C.D. Cal. Apr. 22, 2013) (quoting *In re 2TheMart.com*, 114 F. Supp. 2d at 965). But "[a] Motion to Strike generally will not be granted simply because an allegation is offensive." *Luken v. Christensen Grp. Inc.*, Case No. C16-5214-RBL, 2016 WL 5920092, at *2 (W.D. Wash. Oct. 11, 2016). And that is the case here. Nearly all of these paragraphs contain direct allegations against Ford and Walker. Leaving in the raw, uncut language or details of the alleged misconduct tends to make the allegations more plausible and is consistent with the gravity of the alleged misconduct.

But the Court specifically mentions paragraphs 34, 38, and 57 because they do not as directly allege misconduct of a racist or sexually harassing or assaultive nature against Ford and Walker as to Plaintiffs. However, the Court finds these paragraphs provide context that could be relevant to Plaintiffs' claims against Walker and Ford. For example, taken as true, paragraph 34 tends to show that Ford harassed others in similar ways to Plaintiffs. (ECF No. 14 at 8.) Evidence consistent with this allegation may ultimately be inadmissible under Fed. R. Evid. 404, but it nonetheless seems relevant, and not immaterial or impertinent. Paragraph 38, while related to the tragic death of Grig, a nonparty, tends to show that Brooklyn reported things to Walker and 'other teachers and staff' but was not listened to. (ECF No. 14 at 9.) This is relevant to the supervisory liability theories Plaintiffs assert against WCSD. Grig's tragic death is also necessary context for some of Ford's alleged harassment of Toni, as Grig's death triggered the harassment alleged in paragraphs 57-60. (*Id.* at 13.) The Court accordingly declines to strike paragraphs 34, 38, and 57 even though they do not as directly allege misconduct of a racialized and sexual nature against Ford and Walker.

### B. MOTION TO DISMISS

Having trimmed a few impertinent and immaterial paragraphs from Plaintiffs'

Complaint, the Court now turns to WCSD's motion to dismiss. (ECF No. 24.) Neither Ford nor Walker joined it. Plaintiffs' claims would accordingly proceed against them regardless of the discussion below. The Court begins its discussion of WCSD's motion as to Plaintiffs' Constitutional claims, then turns to Plaintiffs' other federal law claims, and concludes with Plaintiffs' state law claims.

### 1. *Monell* Liability

Plaintiffs' first, second, third, and 18th claims[4] are only cognizable against WCSD to the extent Plaintiffs can establish WCSD's liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). WCSD argues Plaintiffs have not adequately pleaded a *Monell* liability theory because they do not identify any policy, custom, or practice in their Complaint that led to any alleged constitutional violations, nor have they identified a 'final policymaker'—and Walker is not one. (ECF No. 24 at 4-11.) Plaintiffs respond that they have adequately alleged a custom of tolerance for discrimination and failure to remediate it because Walker and "the school's administration" knew about the objectionable conduct described in the Complaint and conspired to hide it instead of remedying it. (ECF No. 28 at 13-14.) Plaintiffs also abstractly argue that "any teacher, administrator, coach or other staff member who witnesses a violation of NRS 388.135 or receives information that a violation has occurred" is a final policymaker under *Monell*, apparently implying that Walker was the pertinent final policymaker. (*Id.* at 16.) The Court agrees with WCSD.

Plaintiffs have not adequately alleged a policy that amounts to deliberate indifference to Plaintiffs' constitutional rights and was the moving force behind any purported constitutional violations. *See Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (listing these as three of the four elements to successfully establish a *Monell* liability theory). The fact that Walker works for Galena High School is not itself sufficient

---

[4]Plaintiffs first and 18th claims are not really claims at all but instead the mechanisms thorough which Plaintiffs could seek to hold WCSD liable for their second and third claims, but this distinction does not particularly matter for purposes of this analysis.

7

to impose *Monell* liability on WCSD. *See id.* (noting that a municipality cannot be held liable solely because it employs a tortfeasor). Indeed, Plaintiffs list in their Complaint a series of policies and regulations that appear, based on their titles, calculated to prevent and remediate the sort of bullying, harassment, sexual assault, and violence described in the Complaint. (ECF No. 14 at 16-18.) Lacking a written policy to rely on, Plaintiffs instead allege that they, "can only infer from Defendants' acts and omissions that there was/is a failure to train, a no-reporting procedure or a custom of non-reporting, tolerance for discriminatory conduct, and an overall practice of deliberate indifference for the plight of Plaintiffs, and other similarly situated students, in this high school and throughout the Washoe County School District." (*Id.* at 18.)

But only some inferences are probable. And probability is the line Plaintiffs must cross for their allegations to survive WCSD's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Complaint lacks plausible allegations that connect the reprehensible alleged behavior of members of the baseball team at one school to school-district-wide policies or practices. And it is notable that Galena High School is just one school of many in WCSD. There are also no allegations in the Complaint that connect Walker, much less the minors on his baseball team, to district-level policy. Indeed, to establish *Monell* liability for a "practice or custom[,]" the "custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy'" and "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). Such allegations are simply lacking from the Complaint.

In addition, and alternatively, the Court also agrees with WCSD that Walker is the only person presented as a policymaker in the Complaint, but Walker cannot plausibly be considered a final policymaker. *See Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) ("'[W]hether a particular official has 'final policymaking authority' is a question of *state*

law'") (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)) (emphasis in original). In *Lytle*, the United States Court of Appeals for the Ninth Circuit determined that, under Nevada law, the board of trustees for each school district is the body responsible for setting all district policies, but that each board of trustees may delegate authority to a delegatee of its choice. *See id.* at 983-84. There are no allegations in the Complaint to the effect that WCSD delegated any of its authority to Walker. And while there are allegations in the Complaint that reference "the school's administration" (ECF No. 14 at 5), "administrators" (*id.* at 11, 13, 14, *etc.*) and "the vice principal" (*id.* at 14), there are no allegations in the Complaint suggesting that any particular administrator at Galena High School had been delegated authority by the pertinent board of trustees to make a policy somehow condoning the harassment and bullying reflected in the allegations in the Complaint either. Thus, Plaintiffs do not plausibly allege that either Walker or any other unnamed administrator at Galena High School is a final policymaker for WCSD whose unilateral action could subject WCSD to *Monell* liability. *See, e.g.*, *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 885 (9th Cir. 2022) ("Plaintiffs do not allege that such a delegation took place here. Indeed, even in their district court briefing, Plaintiffs produced no authority to suggest that a professor becomes a 'final policymaker' for an entire community college district simply by assuming administrative responsibilities within his department[.]") (citation omitted). For the same reason, Plaintiffs' argument to the effect that Nevada law requires school employees to stop bullying and discrimination is beside the point because it does not speak to what authority WCSD's board of trustees delegated to anyone. (ECF No. 28 at 16.) *See also Clark Cnty. Sch. Dist. v. Bryan*, 478 P.3d 344, 360-61 (Nev. 2020) (rejecting a similar argument based on NRS § 388.1351 because "the appellate record does not support that Principal McKay was a final policymaker").

In sum, the Court dismisses Plaintiffs' Constitutional claims (Plaintiffs' first, second, third, and 18th claims) against WCSD.

**2. Title IX**

WCSD also argues that Plaintiffs fail to state a claim for a violation of Title IX under

20 U.S.C. § 1681 because Toni does not sufficiently allege that her harassment was so pervasive and severe so as to deprive her of her educational opportunities and benefits, she fails to set forth facts plausibly alleging that WCSD had substantial control over Ford and his harassment, and neither plaintiff can plausibly allege that they suffered harassment because of their sex. (ECF No. 24 at 20-23.) Plaintiffs' response is again hard to follow, but they generally point to allegations in the Complaint under headings suggesting they are attempting to respond to WCSD's Title IX argument, along with quotations from caselaw addressing Title IX. (ECF No. 28 at 17-21.) Regardless, the Court finds that Plaintiffs' Title IX claim survives WCSD's motion to dismiss.

"Subject to exceptions not relevant here, Title IX provides: 'No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) (quoting 20 U.S.C. § 1681(a)). "A school that receives federal funding can be liable for an individual claim of student-on-student harassment, but only if[:] (1) the school had substantial control over the harasser and the context of the harassment[]; (2) the plaintiff suffered harassment so severe that it deprived the plaintiff of access to educational opportunities or benefits[]; (3) a school official who had authority to address the issue and institute corrective measures for the school had actual knowledge of the harassment[]; and (4) the school acted with 'deliberate indifference' to the harassment such that the indifference 'subject[ed the plaintiff] to harassment[.]'" *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1118-19 (9th Cir. 2023) (citations omitted).

WCSD makes three arguments to the effect that Plaintiffs have not plausibly alleged particular elements of their Title IX claims, targeting only Toni with two of its arguments. None of them are persuasive. The Court begins with WCSD's argument that targets this claim as to both Plaintiffs; because one is male and one is female, they cannot both plausibly allege sexual discrimination because, "it would be apparent that the harassment was against males and females equally, and thus could not have been on the basis of

their sex." (ECF No. 24 at 23.) This argument ignores the allegations in the Complaint. The Complaint alleges patterns of sexualized harassment against both Plaintiffs that is specific to them, and certainly not equal. The Complaint alleges that, "Ford engaged in sexually harassing conduct towards [Toni], grabbing her body and making sexually explicit comments to her. He further subjected [Toni] to taking pictures of her body without her consent and videotaped himself masturbating in her presence[.]" (ECF No. 14 at 8.) The next paragraph of the Complaint alleges that Toni told Walker about this and 'countless other' incidents, including when Ford vandalized her car (*see also id.* at 13), but Walker did nothing (*id.* at 8). Toni clearly alleges harassment based on her sex.

The same goes for N.J. Ford and other boys on the baseball team allegedly, repeatedly threatened to rape him, using phrasing that is clearly harassment based on his perceived sexual orientation. (*Id.* at 6, 8, 9-10.) Student-on-student harassment based on "perceived sexual orientation is actionable under Title IX[.]" *Grabowski*, 69 F.4th at 1116. And just because both Plaintiffs bring a Title IX claim, it does not follow that they allege the same or equal harassment; as described above, they allege harassment (and worse—in both cases the allegations include sexual assault) that is both specific to them and because of their gender (Toni) and perceived sexual orientation (N.J.).

As to Toni specifically, WCSD argues that the alleged harassment was not pervasive or severe enough so as to deprive her of her educational opportunities and benefits. (ECF No. 24 at 20-22.) But Toni alleges Ford sexually assaulted her, and when she told Walker and he did nothing (continuing an apparent pattern of doing nothing), she quit her position as the baseball team manager and withdrew from school. (ECF No. 14 at 8-11.) Particularly at this early stage of the litigation, the Court finds that being forced to withdraw from school plausibly suggests that Toni was deprived of her educational opportunities and benefits. If you are no longer able to attend school, it logically follows that you have been deprived of the educational opportunities and benefits that school offers. To the extent WCSD points to caselaw in attempt to resist this conclusion, the cases WCSD relies on are non-binding and unpersuasive. (ECF No. 24 at 21-22.)

WCSD finally argues Toni fails to set forth facts plausibly suggesting that WCSD had substantial control over Ford and his harassment and assault of Toni. (ECF No. 24 at 22.) But Toni alleges that Ford harassed her on numerous occasions where she was either performing her duties as baseball team manager or the Court can otherwise reasonably infer that she was with members of the baseball team. (ECF No. 14 at 4 (alleging Toni was attending Galena high at all times relevant to the Complaint), 5 (alleging she was harassed while participating in the baseball program), 7 (explaining how the baseball team did a lot together and Walker was very involved in Plaintiffs' lives), 8 (alleging that she reported countless incidents to Walker, who ignored her).) These allegations plausibly show WCSD had substantial control over Ford. *See Grabowski*, 69 F.4th at 1119 ("Plaintiff does not allege a location for the other harassing incidents, but alleges that the harassment occurred on an 'almost daily' and 'regular' basis. It is reasonable to infer that at least some of those interactions occurred at team practices or at other school-sponsored activities under Defendant Coaches' supervision.").

In sum, because the Court finds WCSD's Title IX arguments unpersuasive, the Court denies WCSD's motion to dismiss as to Plaintiffs' Title IX claims.

### 3.  Title VI, 42 U.S.C. § 2000d

WCSD first argues that Plaintiffs' claim under Title VI of the Civil Rights Act of 1964, 78 Stat. 252, *as amended*, 42 U.S.C. § 2000d, *et seq.*, is only alleged on behalf of N.J. (ECF No. 24 at 23-24.) The Court agrees, as the Complaint alleges, "discriminatory acts and expressions against N.J., on the basis of his race[.]" (ECF No. 14 at 27.)

More substantively, WCSD argues this claim should be dismissed because N.J. does not allege any intentional discrimination against WCSD. (ECF No. 24 at 24.) In response, Plaintiffs point to paragraphs 16, 24, 26, and 27 of their Complaint. (ECF No. 28 at 16-17.) The Court agrees with Plaintiffs that these paragraphs plausibly allege intentional, racial discrimination against N.J.

In these paragraphs, N.J. alleges that he was subjected to racial discrimination while playing on the baseball team because other members of the team including Ford

called him racial slurs suggesting he is of Latinx descent in front of Walker, that Walker eventually stopped playing him in baseball games or even acknowledging him in the hall because Walker, too, was participating in this discrimination, and all of this caused N.J. to withdraw from the baseball team, stop eating and studying, and experience anxiety and depression, as diagnosed by his therapist. (ECF No. 14 at 4, 6-7.) These allegations are sufficient at this stage for N.J.'s Title VI claim to proceed against WCSD. *See, e.g.*, *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998) ("It does not take an educational psychologist to conclude that being referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, being shamed and humiliated on the basis of one's race, and having the school authorities ignore or reject one's complaints would adversely affect a Black child's ability to obtain the same benefit from schooling as her white counterparts."); *see also Chen Through Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 722 (9th Cir. 2022), *cert. denied sub nom. Epple v. Albany Unified Sch. Dist.*, 143 S. Ct. 2641, 216 L. Ed. 2d 1226 (2023). ("Indeed, a *failure* by the school to respond to Epple's harassment might have exposed it to potential liability on the theory that it had 'failed to respond adequately' to a 'racially hostile environment' of which it had become aware.") (quoting *Monteiro*, 158 F.3d at 1033) (emphasis in original).

The Court accordingly denies WCSD's motion to dismiss as to N.J.'s Title VI claim.

### 4. Negligence

WCSD argues Plaintiffs' negligence claim must be dismissed in pertinent part because the violation of the statutes Plaintiffs cite in the pertinent portion of their Complaint, which do not impose civil liability, do not provide a basis for the negligence per se theory they appear to be alleging in that claim. (ECF No. 24 at 11-12.) Plaintiffs do not respond to this argument. (ECF No. 28.) The Court accordingly grants WCSD's motion to dismiss as to Plaintiffs' sixteenth claim for negligence (ECF No. 14 at 38-41). *See* LR 7-2(d) (providing that failure to respond to a motion to dismiss constitutes consent to granting that motion).

///

### 5. Negligent Hiring, Retention, and Supervision

WCSD finally argues in pertinent part that Plaintiffs' fifteenth claim for negligent hiring, retention, and supervision is barred by the discretionary immunity doctrine. (ECF No. 24 at 14-15.) Plaintiffs do not directly respond to this argument, but do point to state laws requiring that school staff members report bullying and harassment, and that administrators must take necessary action on those reports. (ECF No. 28 at 22-23.) To the extent Plaintiffs have responded to this argument, the Court agrees with WCSD that Plaintiffs' fifteenth claim for negligent hiring, retention, and supervision (ECF No. 14 at 37-38) is barred by the discretionary immunity doctrine. *See, e.g.*, *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 846 (D. Nev. 2021) (finding that "discretionary immunity applies" to a "negligent training, supervision, and retention claim"). The Court accordingly grants WCSD's motion to dismiss as to this claim, and dismisses it with prejudice as amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (stating in pertinent part that a court may decline to grant leave to amend when amendment would be futile).

### IV.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' pending motions.

It is therefore ordered that Defendant Washoe County School District's Motion to Dismiss (ECF No. 24) is granted in part, and denied in part, as specified herein.

It is further ordered that Defendant Washoe County School District's Motion to Strike (ECF No. 25) is granted in part, and denied in part, as specified herein.

///

///

///

///

The Clerk of Court is directed to strike the following paragraphs from the Complaint: 13, 47, 53 and 54. The Clerk of Court is further directed to strike only the following phrases from paragraphs 34 and 43 of the Complaint; "and Minor Defendants R.C and J.C." from paragraph 34 (ECF No. 14 at 8:12); and "and Minor Defendants C.B., D.B., J.A., and L.S." from paragraph 43 (*id.* at 10:5).

DATED THIS 15th Day of February 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE